UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Christopher Coleman, on behalf of himself and others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>Verde Energy USA, Inc.,  )<br>)<br>Defendant.  )<br>_____ ) | Case No.: 3:17-cv-00062-DRH-SCW |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTION PENDING DECISION IN *ACA INT'L V. FED. COMMNCN'S COMM.***

After Verde Energy USA, Inc. ("Defendant") began placing solicitation calls to Christopher Coleman's ("Plaintiff") cellular telephone, Plaintiff informed Defendant of his desire to no longer receive its telemarketing calls. But Defendant failed to heed Plaintiff's requests and continued calling his cellular telephone, resulting in this action under the Telephone Consumer Protection Act ("TCPA"). Now, rather than face the merits of Plaintiff's class claims, Defendant asks this Court to stay these proceedings for an unspecified period of time pending the outcome of an appeal before the D.C. Circuit in the matter of *ACA Int'l v. FCC*, No. 15-211.

Defendant, however, has not, and cannot, meet its heavy burden to obtain a stay of this litigation. This is in part because Defendant has made no "clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). And further, no matter what happens in *ACA Int'l*, the parties here will still have to conduct discovery into the composition of Defendant's dialing system. Not surprising then, is that the District Court for the Eastern District of Pennsylvania recently denied a similar motion to stay filed by Defendant, in a case that Defendant contends raises "the same allegations that [Plaintiff] raises here." Dkt. No. 16

1

at 1. *See Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 4478839, at *3 (E.D. Pa. Aug. 25, 2016) (Stengel, J.) (denying motion to stay).

This Court should follow the Eastern District of Pennsylvania's lead, and allow this case to proceed forward.

## Statement of Relevant Facts

In about September 2016, Plaintiff began receiving telephone calls from Defendant on his cellular telephone. ¶ 8.[1] During one of the calls, Defendant informed Plaintiff that it was calling to provide Plaintiff the opportunity to save money on his electric rates and asked Plaintiff about the details of his current electric plan. ¶ 9. Plaintiff thereafter informed Defendant that he was not interested in Defendant's services and that Defendant did not have Plaintiff's consent to call him. ¶ 10. Plaintiff ended the call by demanding that Defendant not call him again. *Id.* Notwithstanding Plaintiff's demand that Defendant stop calling him, Defendant called Plaintiff on his cellular telephone at least nineteen more times, including on October 21, 2016, October 22, 2016, October 24, 2016, October 25, 2016, November 15, 2016, and November 16, 2016.  ¶ 11.

## Legal Standard

The Supreme Court's seminal decision in *Landis* recognized that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.[2] But "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-55. In this regard,

---

[1] Citations to "¶ __" or "¶¶ __" refer to paragraphs in Plaintiff's complaint. Dkt. No. 1.

[2] Internal citations and quotations are omitted, and emphasis is added, unless noted otherwise.

*Landis* demands that when a litigant requests a stay pending the outcome of litigation in a separate action—like Defendant does here—that litigant

> must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id.* at 255.

Against this backdrop, in determining whether to grant a motion to stay, courts in this Circuit typically consider three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court. *See Lung v. XPO Logistics*, No. 15 C 03877 2015 WL 12826472, at *1 (N.D. Ill. Aug. 12, 2015) (Chang, J.).

**Argument**

**I. The D.C. Circuit's opinion in *ACA Int'l* will not be dispositive of this matter.**

**A. The meaning of ATDS is well settled.**

The FCC has consistently—for over 13 years—interpreted the term "capacity" in the TCPA using its plain meaning, repeatedly and consistently finding that it means the telephone system need not actually store, produce, or call randomly or sequentially generated telephone numbers, but that it need only have the capacity to do so. *See, e.g.*, *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 ¶¶ 132 (July 3, 2003) ("in order to be considered an automatic telephone dialing system, the equipment need only have the capacity to store or produce telephone numbers"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, ¶ 12 (Jan. 4, 2008) (rejecting arguments that equipment is an ATDS "only when it randomly or sequentially

generates telephone numbers, not when it dials numbers from customer telephone lists"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, ¶ 10 (adopted June 18, 2015 and released July 10, 2015) ("We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers."). Indeed, the Northern District of Illinois recently outlined as much. *See Espejo v. Santander Consumer USA, Inc.*, Case Nos. 11 C 8987, 12 C 9431, 2016 WL 6037625, at *5 (N.D. Ill. Oct. 14, 2016) (Kocoras, J.) ("Under the FCC's controlling interpretation, the pivotal inquiry is whether the dialing system had the 'capacity' to dial numbers automatically, regardless of whether the calls were made manually or using the system's autodialer or predictive dialer features . . . . That FCC interpretation is dispositive here.").

It is therefore not surprising that the only circuit courts to have specifically addressed the ATDS capacity issue have adopted the FCC's findings. *See Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015) ("Thus, so long as the equipment is part of a system that has the latent capacity to place autodialed calls, the statutory definition is satisfied."); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("As we explained in *Satterfield v. Simon & Schuster, Inc.*, the clear language of the TCPA mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."). Notably, that Defendant

does not agree with this uniform law does not make it any less settled.[3]

No matter, Defendant now asks this Court to stay Plaintiff's action, indefinitely, because it purportedly believes there is a chance that the D.C. Circuit will nullify this longstanding position, which, Defendant reasons, would allow it to sidestep the purpose of the TCPA. But given the deference owed to the FCC's interpretive authority, *see Vernal Enters., Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004),[4] and that both the Third and Ninth Circuits have already weighed in on this capacity-related issue contrary to Defendant's position, the likelihood that the D.C. Circuit will simply ignore years of settled law and regulation is doubtful, at best. There is, therefore, no good reason to halt this litigation pending the D.C. Circuit's ruling.

**B. The *ACA Int'l* decision cannot bring an end to this matter absent the completion of discovery.**

Even presupposing that the law about what constitutes an ATDS is *not* established—it is—Defendant's argument that a favorable D.C. Circuit ruling would potentially eliminate all potential liability, does not hold water. This is, in part, because Defendant submits a single affidavit from Anthony Menchaca as the lone piece of evidence to prove the construct and nature of the dialing system purportedly used to make the disputed calls to Plaintiff. *See* Dkt. No. 18-1. Then, from that single affidavit, Defendant concludes that such a system cannot—and does not—fit within the proposed definition of an ATDS it hopes the D.C. Circuit will adopt. Dkt. No. 18 at 2, n.2.

But Menchaca's affidavit states that it was not Defendant, but an unnamed "vendor" who

---

[3] Defendant's citation to *Johnson v. Yahoo!, Inc.*, Dkt. No. 18 at 4, does not help it here. Because while Judge Shah did indicate that he believed there to be a conflict between the FCC's interpretation of ATDS and the statutory requirement, he ultimately concluded that he was bound by the FCC's interpretation. No. 14-cv-02028, 2014 WL 7005102, at *3 (N.D. Ill. Dec. 11, 2014) (Shah, J.).

[4] Not only is the standard for review under which the D.C. Circuit must ultimately evaluate the FCC's 2015 Order "highly deferential," but the D.C. Circuit "must presume the validity of [the] agency['s] action." *Vernal Enters., Inc.*, 355 F.3d at 658.

placed the calls to Plaintiff at issue in this case using the vendor's own equipment. Dkt. No. 18-1 at 1, ¶ 4. And it is entirely unclear how Mr. Menchaca—Defendant's Chief Marketing Officer—would have the knowledge or expertise to opine on the technical capacity of a third party's computerized dialing system. Therefore, Mr. Menchaca's affidavit is, from the outset, of little probative value in assessing the capacity of Defendant's vendor's computerized dialing system. *See, e.g.*, *Webb v. Midland Credit Mgmt., Inc.*, No. 11 C 5111, 2012 WL 2022013 at *5 (N.D. Ill. May 22, 2014) (Lefkow, J.) (rejecting request to admit business records because the witness lacked personal knowledge and was not familiar with the procedures of the entity whose records he was attempting to authenticate).

But more importantly—even assuming, for the sake of argument, that Mr. Menchaca's affidavit is true and accurate—Plaintiff will still have to conduct discovery on Defendant's dialing system no matter the substance of the D.C. Circuit's opinion. *See Glick v. Performant Fin. Corp.*, No. 16-CV-5461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) (Tigar, J.) ("Defendant's assertion that *ACA International*, *Marks*, and the Petition will entirely moot Plaintiff's claims and preclude the need for discovery is speculative [because] Defendant will still be required to produce discovery to settle the factual disputes regarding its autodialing technology no matter the results from the appeals or the Petition."); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16–CV–01109–JST, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017) (Tigar, J.) ("The parties are now engaged in discovery and, as this Court has previously noted, discovery in this case will be required regardless of the outcome in [*ACA International*]."). Thus, even in the extremely unlikely event that the D.C. Circuit completely wipes out the FCC's longstanding characterization of an ATDS, this case will be ripe for disposition only when discovery reveals the workings of Defendant's dialing system. *Richardson*, 2016 WL 4478839, at *3 ("The impact the ACA decision might have on this case is

limited only to the scope of the definition of an automatic telephone dialing system. The plaintiff will still have to conduct discovery on the composition of the defendant's dialing system regardless of the outcome of the ACA case.").

For this reason, Defendant's reliance on Judge Dow's opinion in *Ankcorn v. Kohl's Corp.*, No. 15-cv-1303, 2017 WL 395707 (N.D. Ill. Jan. 30, 2017), *see* Dkt. No. 18 at 6, and his related opinion in *Quinn v. Verde Energy USA, Inc.*, Case No. 16-cv-11196, (N.D. Ill. March 20, 2017), is misplaced. In *Ankcorn,* the issue was not the scope of the definition of ATDS, but rather whether the statutory term "called party" under the TCPA included the "intended recipient" of a telephone call, as well as the application of the safe harbor provision to such calls. *Id.* at *3. As the plaintiff in *Ankcorn* conceded that the calls placed to him were wrong number calls—calls to someone other than the intended recipient—the D.C. Circuit's holding as to the meaning of "called party" would directly impact—and could be potentially dispositive of—Mr. Ankcorn's claims, as well as potentially impacting the scope of the class. *Id.* at *2. Here, by contrast, even if the D.C. Circuit adopts the definition of ATDS that Defendant wishes it to, the parties will still need to conduct discovery on the dialing system used here so that the Court can decide if that dialing system falls within the new definition.

In *Quinn,* which is not a proposed class action, Judge Dow merely relied on his analysis in *Ankcorn*, without addressing the fact that discovery on the defendant's ATDS would be needed no matter the outcome in *ACA Int'l*. Moreover, since *Quinn* is not a proposed class action, there was no concern there about the ongoing damage and potential prejudice to absent class members in the way of continued violative phone calls. *See infra* Argument Section II.A.

A stay, as Defendant proposes, therefore serves no justified purpose. As such, the proper approach is to deny Defendant's request for a stay and allow the parties to proceed with discovery

into the dialing system Defendant used to make the calls at issue to Plaintiff. *See, e.g.*, *Lee v. LoanDepot.com, LLC*, No. 14-1084-MLB, 2015 WL 5032175, at *2-3 (D. Kan. Aug. 25, 2015) (Birzer, Mag.) (a stay pending the *ACA Int'l* appeal was not warranted because the FCC Order resolving 21 separate requests for clarification provided sufficient guidance and defendant was not prejudiced by the case proceeding); *Nussbaum v. Diversified Consultants, Inc.*, No. CIV. 15-600, 2015 WL 5707147, at *2 (D.N.J. Sept. 28, 2015) (Thompson, J.) (denying a motion to stay pending the outcome of *ACA Int'l* because the defendant would not suffer undue hardship by engaging in discovery and motion practice).

**II. Defendant fails to carry its burden to justify the exceptional relief it seeks.**

Having addressed the effects an *ACA Int'l* reversal *could* potentially have on this litigation (however remote), Plaintiff now turns to the merits of Defendant's motion itself—that is, whether the circumstances of that appeal favor a potential months-long delay of this matter. Plaintiff respectfully submits that they do not.

**A. A stay will unduly prejudice Plaintiff and the putative class.**

Defendant contends that Plaintiff will not be prejudiced by a stay of this action because Defendant placed his cellular telephone number on its "internal Do-Not-Call list," and because no calls regarding Defendant have been made since November 2016. Dkt. No. 18 at 7. Of course, while Defendant claims it has remedied any ongoing illegal conduct with regard to Plaintiff, Defendant makes no representation as to its ongoing conduct with respect to any absent class members whose cellular telephones have been autodialed by Defendant without their consent.[5]

---

[5] As there is nothing in the record explaining why Defendant continued to call Plaintiff after he demanded that Defendant cease calling him, it is unclear that Defendant fixed whatever internal control issues it had such that it has stopped calling any other class members who it was calling after those persons asked Defendant to stop calling. As such, there remains ongoing potential prejudice to absent class members in the way of continued violative phone calls. Not surprisingly then, as Defendant points out, it has now

Moreover, Defendant's argument completely ignores the potential prejudice to Plaintiff and the class members in litigating the claims over Defendant's past violations. *See Cabiness*, 2017 WL 167678, at *3 (an extended stay pending the outcome of the *ACA Int'l* appeal "would prejudice the Plaintiff because the passage of time will make it more difficult to reach class members and will increase the likelihood that relevant evidence will dissipate"). This point is especially important because "the resolution of *ACA International* does not mark the final disposition of the issues on appeal. The losing party will likely appeal the D.C. Court's decision, further delaying these proceedings until the issues are finally decided by the U.S. Supreme Court." *Glick*, 2017 WL 786293 at *2. And as Defendant represents it was using one or more vendors to make the calls at issue, Dkt. No. 18-1 at 1, ¶¶ 3-4, the fact that there are multiple entities—including at least one that is not a party to this litigation—who are likely to have relevant evidence, makes it even more likely that evidence will not be properly preserved, lost or destroyed during any extended delay of the litigation. *See Richardson*, 2016 WL 4478839, at *3 ("Moreover, as the plaintiffs argue, a significant delay with unknown limits would cause them unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit.").

More fundamentally, a stay "would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-cv-01821-BLF, 2016 WL 815357, *5 (N.D. Cal. Mar. 2, 2016) (Freeman, J.). The longer it takes for Plaintiff to seek judgment against Defendant, the longer the class waits to be compensated for Defendant's repeated violations.

---

been sued multiple times in various jurisdictions for this same, seemingly ongoing, conduct. *See* Dkt. No. 16 at 1.

### B. Defendant has shown no "clear case of hardship or inequity."

Under *Landis*, if there is even a fair possibility that the stay will work damage to the non-moving party, the moving party must make out a clear case of hardship or inequity in being required to go forward. *Landis,* 299 U.S. at 255. Here, Defendant has made no showing of any hardship or inequity in having to move forward with the litigation. *See Mendez v. Optio Solutions*, LLC, Case No.: 3:16–cv–01882 AJB (KSC), 2017 WL 914587, at *4 (S.D. Cal. Mar. 8, 2017) (Battaglia, J.) (denying request for stay pending resolution of *ACA Int'l* in part because "Defendant [did] not demonstrate a hardship in moving forward with inevitable discovery and motion practice.").

Even assuming the disposition of *ACA Int'l* ultimately favors Defendant—however unlikely—merely "being required to defend a suit [in the interim], without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*" to justify a stay of this action. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (vacating district court stay). The same holds true even in the face of prospective class discovery above and beyond merits discovery. *See, e.g.*, *Montez v. Chase Home Fin. LLC*, No. 11-530, 2011 WL 2729445, at *1 (S.D. Cal. July 13, 2011) (Sammartino, J.) (refusing stay in spite of defendant's complaint of the potential "significant burden and expense of engaging in potentially broad-ranging and expensive discovery concerning this putative class action").

Accordingly, Defendant fails to show any hardship or inequity to justify the extraordinary relief it seeks, and thus fails to meet its burden under *Landis*. *See Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (LaPorte, J.) ("Because there is no certain way to determine when a ruling will be forthcoming, and, as Lathrop points out, a decision by the D.C. Circuit may not be the end of litigation in ACA International, the Court concludes that there is a fair possibility of harm to Plaintiff because the length of the stay is an indefinite one."); *Konopca*

10

*v. Comcast Corp.*, No. CV156044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26, 2016) (Arpert, Mag.) (denying stay pending the *ACA Int'l* decision where "the only purported 'hardship' identified by Defendant is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice").[6]

### C. There is no efficiency to be gained from a stay here.

Moreover, for all the reasons described above, there is no efficiency to be gained from an indefinite stay of this action. The supposed efficiency proposed by Defendant is illusory, given that the parties would need to conduct discovery on the dialing system used to make the calls regardless, and as the law is settled regarding Plaintiff's TCPA claims. *See supra* Argument, Section I.A.

Indeed, Defendant's request to stay this case pending the outcome of *ACA Int'l* rings particularly hollow in light of the long, tortured history of TCPA defendants like itself using repeated stay requests as a sword rather than a shield. Prior to the issuance of the FCC's July 2015 Order, TCPA defendants routinely moved district courts across the country to stay TCPA actions until the FCC decided the petitions then pending before it (which included ACA's petition). To that end, defendants regularly argued that the FCC's forthcoming guidance would be binding, and would constitute the last, final, and official word on the TCPA.[7]

---

[6] *See also Nussbaum*, 2015 WL 5707147, at *2 (denying stay pending *ACA Int'l* where the only hardship identified in the absence of a stay was unnecessary discovery and motion practice); *Jones v. AD Astra Recovery Servs., Inc.*, No. 16-1013-JTM-GEB, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016) (Birger, Mag.) (denying stay pending *ACA Int'l* and finding the "potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a 'rare circumstance' which justifies an indefinite stay").

[7] These motions are far too numerous to list exhaustively. But the following represent a small sampling: *Higginbotham v. Hollins*, No. 14-2087, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014); *Gusman v. Comcast Corp.*, No. 13-1049, 2014 WL 2115472, at *5 (S.D. Cal. May 21, 2014); *Barrera v. Comcast Holdings Corp.*, No. 14-00343, 2014 WL 1942829, at *4 (N.D. Cal. May 12, 2014); *Matlock v. United Healthcare Servs., Inc.*, No. 13-02206, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014); *Pickens v. Am. Credit Acceptance, LLC*, No. 14-00201, 2014 WL 4662512, at *3 (S.D. Ala. Sept. 19, 2014);

Then, on July 10, 2015, the FCC issued that binding guidance by way of its Declaratory Ruling and Order, which provided the clarity defendants across the country had long been waiting for. The only problem: the FCC's outcome was not in those defendants' favor. Thus, Defendant's request that this Court now stay Plaintiff's action pending further review (by way of *ACA Int'l*) is paradoxical. And this Court should take note of it, not because of its irony, but because it demonstrates that TCPA defendants' motions to stay actions pending petitions before the FCC, subsequent appeals of those petitions, and what inevitably will be even more appeals after that, are merely a means to perpetually avoid litigation resulting from those defendants' violations of the TCPA.

**III. A stay here would amount to a constructive refusal to enforce binding FCC orders.**

Also significant, the Supreme Court has recognized that FCC orders are entitled to deference under *Chevron* because Congress intended such rulings to have the full force and effect of law. *See Nat'l Cable & Telcomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967, 980-81 (2005). As a result, FCC orders on the TCPA are binding on this Court. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that the FCC's orders relating to the TCPA are binding under the Hobbs Act); *Blow v. Bijora, Inc.*, 191 F. Supp. 2d 780, 787 (N.D. Ill. Feb. 4, 2016) (Barbour, J.) ("Thus, the FCC rulings are binding upon the Court, and the Court lacks the jurisdiction to determine whether the FCC acted with the scope of its statutory mandate."). As such, a stay here pending the outcome of the *ACA Int'l* appeal could amount to a constructive refusal to apply binding FCC orders:

> Staying this case because the [D.C.] Circuit Court may conclude that FCC incorrectly interpreted the TCPA is the opposite of affording the Final Order deference. Granting a stay premised on the contention that the FCC got it wrong could, in fact, amount to a constructive "refus[al] to enforce an FCC

---

*Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014); *Glauser v. Twilio, Inc.*, No. 11-2584, 2012 WL 259426, at *3 (N.D. Cal. Jan. 27, 2012).

interpretation"—an action this Court is expressly prohibited from taking—and a "violat[ion of] the Hobbs Act's prohibition on district court review of FCC orders." *Id*. This reason, the Court concludes, is alone sufficient to deny Bright House's Motion for Stay.

*Sliwa v. Bright House Networks, LLC*, No. 16-235, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) (Steele, J.).

## Conclusion

Each year, interest groups file petitions with federal agencies seeking favorable interpretations of various laws. *See Abrantes v. Northland Grp., Inc.*, 14-cv-05311 (YGR), 2015 WL 1738255 at *3 (N.D. Cal. Apr. 13, 2015) (Rogers, J.) ("While the *ACA* and *United* Petitions are pending, they are two out of thousands of such petitions pending before the FCC."). Many rulings on those petitions are subsequently appealed, as in *ACA Int'l*. But staying cases while such petitions and inevitable appeals work their way through the agencies, and then the courts, necessarily frustrates the efficient administration of justice. It also leads to the indefinite postponement of cases like this one, as an endless cycle of new petitions and new appeals are filed.

Given the well-settled TCPA law with regard to the meaning of ATDS, *ACA Int'l* should have no bearing on this action. And even if it may have some bearing, the parties would still need to conduct significant discovery with regard to the Defendant's dialing system in order for this Court to assess what impact, if any, the D.C. Circuit's opinion in *ACA Int'l* would have on this case. Accordingly, and as Defendant fails to make the requisite showing to obtain a stay, this Court should deny Defendant's motion.

Dated: March 23, 2017                    Respectfully submitted,

                                          */s/ James L. Davidson*
                                          James L. Davidson (*pro hac vice*)
                                          Lead Counsel

13

>Greenwald Davidson Radbil PLLC
>5550 Glades Road, Suite 500
>Boca Raton, FL 33431
>(561) 826-5477
>(561) 961-5684 (Fax)
>jdavidson@gdrlawfirm.com
>
>Counsel for Plaintiff and the proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2017 I filed the foregoing using the Court's CM/ECF system which will provide notice to:

Vitaly Libman
Hinshaw & Culbertson LLP
521 W. Main St., Suite 300
Belleville, IL 62220

Counsel for Defendant

>By: */s James L. Davidson*
>James L. Davidson (*pro hac vice*)